IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CLIFTON B. HENNINGTON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 6:20-CV-00302 |
| § | |
| KEITH GORSUCH, ET AL., § | |
| § | |
| Defendants. § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Plaintiff Clifton B. Hennington, an inmate confined in the Texas Department of Criminal Justice ("TDCJ"), proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case. For the reasons stated herein, the Court **RECOMMENDS** that this civil rights lawsuit be **DISMISSED** for failure to state a claim upon which relief can be granted.

### BACKGROUND

On June 8, 2020, Plaintiff Clifton B. Hennington filed his original complaint against Defendants former TDCJ-CID Director Lorie Davis, former Senior Warden Keith Gorsuch, Assistant Warden Raleigh Breedan, Assistant Warden William Wheat, current Senior Warden Kurt Stiefer, and Unit Grievance Investigator G. P. Harris regarding grievances, mail, and his conditions of confinement at the Beto Unit. The original complaint contained very broad and vague claims. (Dkt. #1). Plaintiff was ordered to file an amended complaint (Dkt. #57) alleging specific facts that would allow the Court to draw the reasonable inference that the individual defendants are liable

1

for the harm alleged and that would defeat a qualified immunity defense. As such, he was given the opportunity to rectify the problem by filing an amended complaint. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994).

Plaintiff filed his amended complaint on October 16, 2020 (Dkt. #69). An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). As a result, the amended complaint will be the governing complaint in this case. As before, the amended complaint contains very broad and vague claims.

Plaintiff is suing each Defendant in their respective official and individual capacities. (Dkt. #69, p. 3). He asserts claims under the First Amendment for denial of grievances and mail issues and under the Eighth Amendment for conditions of confinement. Plaintiff also maintains that his rights under Fifth Amendment have been violated. Plaintiff also states he is bringing a claim for negligence. (*Id*., p. 4).

He states that Defendant Gorsuch rehoused Beto Unit P-Wing inmates to O-Wing on July 19, 2019. He asserts that O-Wing was not in compliance with the Texas State Health Policy. On July 19, 2019, Defendants Gorsuch and Harris walked through O-Wing and saw the unhealthy conditions there. The inmates were moved back to P-Wing for a few days. Plaintiff claims he was sick, suffered mental and emotional stress from being moved rudely, multiple times, and being promised that the situation would improve. (*Id*). He alleges that black mold, dust, and water leaks dominated O-Wing.

Plaintiff further complains that Defendants Wheat, Breedan, and Harris denied multiple grievances regarding the living conditions on O-Wing. Plaintiff also states that he contracted Covid while housed on O-Wing in March 2020.

He asserts that O-Wing inmates were "mistreated" while Defendant Stiefer was the Senior Warden at the Beto Unit. Plaintiff does not specify how the inmates were mistreated or by whom. He alerted Warden Stiefer to the heat and the lack of air conditioning in O-Wing through an I-60 (Interoffice Communication) that he wrote. Plaintiff also raised issues with Warden Stiefer regarding the plumbing, the electrical system, and the air quality but received no response. Plaintiff does not provide any factual detail regarding these claims or how these claims impacted him.

Plaintiff also states that inmate mail has been an issue, with legal mail going missing or being tampered with, under Warden Stiefer's time at the Beto Unit. (Dkt. #69, p. 5). He, however, does not assert any facts that his mail, legal or otherwise, was tampered with or was missing.

He contends that former TDCJ-CID Lori Davis visited the Beto Unit after the filing of the Original Complaint. Plaintiff alleges that Defendant Davis knew about the ongoing issues at the Beto Unit and often overlooked the occupants of O-Wing. He states that Defendant Davis did not visit O-Wing or see the pipe chase. (*Id*., p. 6). Plaintiff does not explain how or why the pipe chase is relevant to his claims.

He is seeking $35,000 in compensatory damages from the Defendants jointly and severally, $30,000 in punitive damages against each defendant, and declaratory relief that his constitutional rights have been violated. Plaintiff also seeks injunctive relief in the form of ordering each Defendant to cease their physical, mental, emotional, and psychological mistreatment toward Plaintiff. (*Id*.). Plaintiff was transferred from the Beto Unit to the Clements Unit on August 20, 2021. (Dkt. #77).

## LEGAL STANDARD

Plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental

entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under 28 U.S.C. § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts, when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice." *Id*. (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke*, 490 U.S. at 327; *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Plaintiff has been allowed to plead his best case. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). After a plaintiff has had a fair opportunity to make his case—and if a cause of action has not been established—the court may dismiss the suit. *Id*. at 792.

## DISCUSSION

### A. Official capacity claims for money damages

Plaintiff is suing Defendants in their official capacities. Plaintiff's claim against the Defendants in their official capacities for money damages is barred by the Eleventh Amendment. Unless a State consents to suit or Congress exercises its power to override a state's immunity, the Eleventh Amendment bars Section 1983 suits in either state or federal courts. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Suits brought against state officials in their official capacity are, in effect, asserted against the state itself and are similarly barred. *Id.* at 71.

It follows that the Eleventh Amendment bars recovery of damages under 42 U.S.C. § 1983 from state employees in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). While a state official's future conduct may be subject to an injunction, a federal court may not award damages against a state official in his official capacity. *Saahir v. Estelle*, 47 F.3d 758, 762 (5th Cir. 1995). To the extent that Plaintiff seeks money damages from Defendants in their official capacities, the Eleventh Amendment bars his claim. The Court recommends that Plaintiff's claim

for money damages against the Defendants in their official capacities be dismissed for failure to state a claim upon which relief may be granted.

**B.     Supervisory Liability Claims**

In his Amended Complaint, Plaintiff states that he is suing Defendants Gorsuch, Wheat, Breeden, and Stiefer because each defendant is legally responsible for the operation of the Beto Unit and for the welfare of all the inmates at that prison. (Dkt. #69, p. 2). Plaintiff is suing former TDCJ-CID Director Davis because she is "responsible for the overall operation of state prisons in Texas, and also for the safety of all inmates in Texas state prisons." (*Id.*) Plaintiff is suing each of these five defendants because of their respective roles in managing either the Beto Unit or the Texas prison system. As such, he is suing them in their supervisory capacities.

In order to successfully plead a cause of action in a civil rights case, a plaintiff must ordinarily articulate a set of facts that illustrates a defendant's participation in the alleged wrong. *Jacquez*, 801 F.2d at 793. The doctrine of *respondeat superior*, however, does not apply in section 1983 actions. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). The Supreme Court has held that the term supervisory liability in the context of a section 1983 lawsuit is a "misnomer" since "[e]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. The Court rejected an argument that government officials may be held liable merely because they had knowledge or acquiesced in their subordinate's misconduct. *Id.* A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). Plaintiff has not alleged any facts showing that each Defendant was

6

personally involved in denying him his constitutional rights. His claim is purely speculative and does not save it from dismissal. *Silva v. Moses*, 542 F. App'x 308, 310-11 (5th Cir. 2013).

Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy" itself is a repudiation of constitutional rights and is "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 304 (quotations omitted). In order to establish a claim for governmental liability under Section 1983, a plaintiff must allege and identify a policy or custom of the governmental entity (or of a final policymaker of the governmental entity) that caused a deprivation of the plaintiff's rights. Plaintiff does not identify a policy which is the driving force of any constitutional violation. Plaintiff's supervisory liability claims against Defendants Gorsuch, Wheat, Breedan, Stiefer, and Davis should be dismissed for failure to state a claim upon which relief may be granted.

**C.     First Amendment Claims**

  1.     Investigations and Denial of Grievances

Plaintiff contends that Warden Wheat, Warden Breedan, and Grievance Investigator Harris failed to adequately investigate his grievances and stop the alleged harmful conditions of confinement as stated in his grievances. Plaintiff's complaints regarding the denial of his grievances, the grievance procedure, or the quality of the grievance investigations fail to state a claim.

An inmate has no constitutional right to an adequate and effective grievance procedure. *Propes v. Mays*, 169 F. App'x 183, 184–85 (5th Cir. 2006) (citing *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005)). The Constitution also does not create a federally protected liberty interest for prisoners to have their grievances investigated or resolved to their satisfaction. *See Minix v. Stoker*, 289 F. App'x 15, 17 (5th Cir. 2008); *Geiger*, 404 F.3d at 373–74.

Any alleged due process violation arising from an "alleged failure to investigate [prisoner] grievances is indisputably meritless." *Geiger*, 404 F.3d at 374; *see also Taylor v. Cockrell*, 92 F. App'x 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated [the prisoner's] constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."). To the extent Plaintiff claims he was entitled to more investigation and response, he has no protected due process rights in the handling of his grievances. *See Morris v. Cross*, 476 F. App'x 783, 785 (5th Cir. 2012) (rejecting claim that prison officials' failure to conduct an adequate investigation into his grievance implicated due process concerns "because [appellant] lacks a protected interest in a favorable resolution to his grievances"). He also has no claim against prison officials merely because that official denied his grievances. *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013). Plaintiff simply has no "federally protected liberty interest in having these grievances resolved to his satisfaction." *Geiger*, 404 F.3d at 374; *see Avon v. Green*, No. 14-CV-109, 2014 WL 1917543, at *2 (N.D. Tex. May 12, 2014) ("Denying plaintiff's grievances or failing to resolve them in the manner preferred by plaintiff, is not a violation of plaintiff's constitutional rights.").

The mishandling of grievance processes by a prison official also "does not give rise to a First Amendment claim for denial of access to the courts." *West v. Putman*, No. 2:18-CV-71, 2018 WL 4211749, at *4 (S.D. Tex. Apr. 12, 2018) (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). Moreover, the Fifth Circuit has held that there is not a constitutionally "protected liberty interest in the processing of ... prison grievances." *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (citing *Geiger*, 404 F.3d at 373–74); *see also Mayfield v. Wilkinson*, 117 F. App'x 939, 940 (5th Cir. 2004) (finding that a prisoner was not "constitutionally entitled to an administrative grievance procedure."). Plaintiff's allegations fail to state a cognizable claim under the First

8

Amendment. *West*, 2018 WL 4211749, at *4 (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Plaintiff's claims related to the grievance procedure and the denial or unsatisfactory resolution of his grievances are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

    2.    <u>Mail tampering and missing mail</u>

Plaintiff asserts that while Defendant Stiefer was the warden at the Beto Unit, Stiefer ignored the issues regarding prisoners' mail, particularly missing legal mail and mail that had been tampered with. (Dkt. #69, p. 5). Plaintiff does not allege that Defendant Stiefer personally tampered with the mail or that Stiefer personally lost the legal mail. Plaintiff does not assert any policy or custom created by Defendant Stiefer that was the cause of the missing or tampered mail. Plaintiff further does not allege that any of his personal mail was at issue or that he suffered any personal harm from these issues.

The Fifth Circuit has held that prison practices or restrictions concerning prisoner mail implicate two distinct but intertwined constitutional rights: (1) the right to access to the courts, which the Supreme Court has indicated lies in both the Due Process Clause and the First Amendment, *Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974), and (2) the right to freedom of speech guaranteed by the First Amendment. *Walker v. Navarro Cnty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993); *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Specifically, the right of access to the courts is implicated only when the mail in question is legal in nature, while the right to free speech is relevant to claims involving both legal and non-legal mail. Regardless of what rights are implicated, it is clear that prisoners' constitutional rights with respect to mail are not absolute.

A prison practice or regulation may permissibly interfere with an inmate's mail, including his legal mail, if the practice is "reasonably related to a legitimate penological interest." *Morgan*

*v. Quarterman*, 570 F.3d 663, 666 (5th Cir. 2009) (quotation omitted) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989 (applying reasonableness standard to challenges to regulations as well as to actions of a prison official).

To the extent that Plaintiff is complaining that the opening of his outgoing mail ("tampering") interfered with his constitutional right of access to the courts, it is well established that prisoners have such a constitutional right. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted); *accord Manning v. Sumlin*, 540 F. App'x 462, 463 (5th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Brewer*, 3 F.3d at 821).

Significantly, to state a claim that his constitutional right of access to the courts was violated, Plaintiff must demonstrate that his position as a litigant was actually prejudiced. *Lewis,* 518 U.S. at 356; *Every v. Jindal*, 413 F. App'x 725, 727 (5th Cir. 2011) (citing *Lewis*, 518 U.S. at 349-50; *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)); *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); *Eason*, 73 F.3d at 1328. It is not sufficient for a prisoner to establish only that his mail was opened outside of his presence or without his consent. *Walker*, 4 F.3d at 413. The inmate must "demonstrate that the alleged shortcomings hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. In *Lewis*, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the *Lewis* case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to

"have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356 (emphasis added).

Here, Plaintiff's Amended Complaint (Dkt. #69) fails to state a cognizable Section 1983 claim for violation of his rights for either access to the courts or free speech. As to his First Amendment right of access to the courts claim, Plaintiff fails completely to allege an actual injury to his position as a litigant, as required in *Lewis* and its progeny. The alleged missing or misplacement of his mail while he was at the Beto Unit had no effect that Plaintiff identified in his Amended Complaint. It is well-settled that, in order to state a claim of the violation of the Sixth Amendment right of access to the courts, an inmate must allege that he has suffered some cognizable legal prejudice as a result of the alleged wrongful conduct. *See Lewis,* 518 U.S. at 343. Plaintiff has failed to allege that he suffered any prejudice whatsoever as a result of any Defendant's actions.

As to his free speech rights, Plaintiff does not allege any deprivation of outgoing mail delivery. He contends that mail was missing but he does not allege any facts as to whether the mail was undelivered or delayed. The Supreme Court "has never held that reading inmate mail violates the First Amendment." *Busby v. Dretke*, 359 F.3d 708, 722 (5th Cir. 2004). Nonetheless, "'[a] prison official's interference with a prisoner's legal mail ... may violate the prisoner's First Amendment right to free speech—*i.e.*, the right to be free from unjustified government interference with communication.'" *Damm v. Cooper*, 288 F. App'x 130, 132 (5th Cir. 2008) (quoting *Brewer*, 3 F.3d at 820). The Fifth Circuit, however, has recognized a legitimate penological need for prison "personnel to open, review and occasionally censor outgoing mail" because of concerns about possible threats to prison security, including ensuring that the mail does not contain contraband. *Franco v. Collins*, No. 2:14-CV-148, 2015 WL 136544, at *1 (S.D. Tex. Jan. 8, 2015) (citing

*Busby*, 359 F.3d at 721); *McCartney v. Keith*, No. 14-CV-230, 2014 WL 5092017, at *2 (W.D. La. Oct. 9, 2014) (citing *Busby*, 359 F.3d at 721).

Plaintiff fails to allege any facts that he suffered actual injury or legal prejudice of any kind resulting from the alleged tampering with his legal mail. Accordingly, to the extent Plaintiff is claiming that the mail tampering interfered with his access to the courts, his claim is legally frivolous and does not state a claim of violation of constitutional rights upon which relief can be granted under Section 1983. For the foregoing reasons, Plaintiff's mail claim is legally frivolous in all respects and does not state a claim of a violation of constitutional rights upon which relief can be granted under Section 1983.

**D.    Eighth Amendment Claims**

Plaintiff asserts that he is suing Defendants under the Eighth Amendment. "'The Supreme Court has held that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.'" *Torres v. Livingston*, 972 F.3d 660, 662 (5th Cir. 2020) (quoting *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002)). An Eighth Amendment claim regarding conditions of confinement must meet two requirements: first, the conditions must have caused an "objectively, sufficiently serious" deprivation, defined as the denial of "the minimal civilized measure of life's necessities." *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Second, prison officials must have acted with "deliberate indifference" to the plaintiff's health or safety, which means that the official knows that the inmate faces a "substantial risk of serious harm" but "disregards that risk by failing to take reasonable measures to abate it." *Id*. at 561 (internal citation and quotation marks omitted).

The official must be subjectively aware of the facts from which the inference could be drawn and must actually draw the inference. *Id*. "'Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm.'" *Torres*, 972 F.3d at 663 (quoting *Williams v. Banks*, 956 F.3d 808, 811 (5th Cir. 2020)); *see Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015).

In addition to failing to allege any facts that show that any named defendant was personally involved in the alleged violations of his constitutional rights, Plaintiff's specific complaints about prison conditions at the Beto Unit fail to rise to the level of a constitutional violation. He raises vague and conclusory complaints about black mold, dust, water leaks, the plumbing, the electrical system, the air quality, the heat, and the lack of air conditioning. For the most part, Plaintiff has provided no more than generalized and conclusory statements. *Twombly*, 590 U.S. at 555, 557 (holding that a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement.").

"To succeed on his conditions-of-confinement claim, [Plaintiff] must show that (1) his confinement, objectively speaking, resulted in a deprivation that was sufficiently serious; and (2) that prison officials acted with deliberate indifference." *Haralson v. Campuzano*, 356 F. App'x 692, 696 (5th Cir. 2009) (citing *Farmer*, 511 U.S. at 825)); *see also Hernandez*, 522 F.3d at 560. "[T]he deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measures of life's necessities." *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) (internal quotation marks and citation omitted). "[E]xtreme deprivations are required" in order to meet the objective component of a conditions of confinement claim. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998). In order to satisfy the

subjective component, the prisoner must establish that the defendants "acted with deliberate indifference to his conditions of confinement." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1999) (footnote omitted). "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Rhodes*, 452 U.S. at 347; *Farmer*, 511 U.S. at 832. Plaintiff failed to allege facts supporting the necessary elements of a deliberate indifference claim as against these particular Defendants.

In addition to examining Plaintiff's complaints within the Eighth Amendment conditions of confinement context, the Court must also be cognizant of the application of Prison Litigation Reform Act to Plaintiff's claims. The Court notes that 42 U.S.C. § 1997e(e) bars claims for compensatory damages in the absence of a physical injury. The Fifth Circuit "has held that § 1997e(e) prevents a prisoner who has not alleged a physical injury from seeking compensatory damages." *Samford v. Staples*, 249 F. App'x 1001, 1002 (5th Cir. 2007) (citing *Harper*, 174 F.3d at 719)).

1. Heat conditions

Plaintiff complains about heat and the lack of air conditioning in O-Wing. Without any explanation or factual detail, Plaintiff states that O-Wing is hot and lacks air conditioning. He does not provide any facts that he suffered any harm from the temperature conditions in O-Wing. Plaintiff's conclusory allegations fail to state a claim upon which relief could be granted. The Court recommends that this claim be dismissed for failure to state a claim upon which relief may be granted.

2. <u>Mold and dust in O-Wing</u>

Plaintiff also complains that there is black mold and dust in O-Wing. Plaintiff does not allege any harm that he has suffered from the presence of mold or dust. The mere fact that there is mold, mildew, or fungus does not warrant relief. *Carter v. Strain*, C.A. No. 09–15, 2009 WL 3231826 at *3 (E.D. La. Oct. 1, 2009); *McCarty v. McGee*, No. 2:06cv113, 2008 WL 341643 at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Courts who have examined claims for mold in prison settings and complaints of generalized physical maladies, such as exacerbation of asthma and allergy symptoms, have found these and similar maladies insufficient to support an Eighth Amendment conditions of confinement claim for purposes of 42 U.S.C. § 1997e(e). *Wilson v. State Counsel for Offenders*, No. H-0-2120, 2010 WL 3056657 *5-6 (S.D. Tex. Jul. 30, 2010); *see Mayes v. Travis State Jail*, No. 06–CA–709, 2007 WL 1888828 (W.D. Tex. June 29, 2007) (finding as *de minimis* inmate's claims for recurrent sinus infections allegedly due to mold and mildew exposure); *Smith v. Fox*, No. 4:05–CV–1554, 2006 WL 2090170 *6 (D.S.C. 2006) (finding as *de minimis* inmate's claims of migraines and sores in his nose and mouth due to mold and mildew in his cell); *Gill v. Shoemate*, No. 05–CV–2124, 2006 WL 1285412 at *5 (W.D. La. May 8, 2006) (finding as *de minimis* complaints of headaches and eye and throat irritation following exposure to mold, mildew, dust, and fumes); *Vega v. Hill*, No. 3–05–CV–1577, 2005 WL 3147862 (N.D. Tex. Oct. 14, 2005) (finding that conclusory allegations of "bad headaches, sleeplessness," and "dizziness" due to exposure was insufficient to establish a physical injury that was more than *de minimis*). Plaintiff's mold and dust claim fails to state a claim upon which relief may be granted and should be dismissed.

  3. <u>Conditions in O-Wing</u>

Plaintiff complains that O-Wing does not meet the Texas State Health Policy. To the extent that he is complaining that O-Wing is in a state of deterioration and suffers from water leaks, he fails to state a claim. Plaintiff's pleadings wholly fail to show that he was confined under such extreme conditions as to violate the Eighth Amendment. *See Gates v. Cook*, 376 F.3d 323, 334 (5th Cir. 2004) (inmates held in cells "that were extremely filthy with chipped, peeling paint, dried fecal matter and food encrusted on the walls, ceilings, and bars, as well as water from flooded toilets and rain leaks"); *McCord v. Maggio*, 927 F.2d 844, 846 (5th Cir. 1991) (inmate's cell had sewage water and human waste back up into it, and because there was no bunk, inmate had to sleep on mattress placed on the floor). In the absence of any showing that the conditions of confinement amounted to an "extreme deprivation," regardless of whether any harm had yet been suffered, Plaintiff's complaint regarding the condition of O-Wing and water leaks are without merit.

Plaintiff's allegations about dirty and dusty conditions in the cells and dayrooms fail to establish constitutional violations. *See Davis*, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10–98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (Lemmon, J.) (citing *Talib v. Gilley*, 138 F .3d 211, 215 (5th Cir. 1998)); *Wilson*, 878 F.2d at 849 & n.5 (finding that inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, 52 inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water, and un-sanitized living quarters, failed to state a claim. "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional.")).

Plaintiff also asserted that he contracted Covid-19 in March 2020 while housed on O-Wing. (Dkt. #69, p. 4). His bald assertion that he contracted Covid—in the absence of any facts showing that the Defendants were deliberately indifferent to a substantial risk to his serious medical needs—fails to state a claim. Even as against the Defendants in their respective supervisory roles, Plaintiff failed to plead sufficient allegations regarding the Defendants' action or inactions to state a plausible claim for relief of an official policy or custom, promulgated by a policymaker, or a violation of a constitution right whose moving force was the policy or custom. Plaintiff simply fails to state a claim regarding his Covid claim.

Here, Plaintiff failed to state any facts that support a colorable claim for deliberate indifference as to his health or safety. Plaintiff's Eighth Amendment claims for deliberate indifference should be dismissed from failure to state a claim upon which relief may be granted.

### E.   Negligence

Plaintiff states that he is suing the Defendants for negligence. (Dkt. #69, p. 4). The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment is not implicated by a negligent act of an official causing unintended injury to life, liberty, or property. *Daniels v. Williams,* 474 U.S. 327, 331–33 (1986). Complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act even if such complaints could be valid under state law. *See Bowie v. Procunier,* 808 F.2d 1142 (5th Cir. 1987).

Negligence on the part of prison officials does not rise to the level of a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Instead, a prisoner must show that prison officials were deliberately indifferent. *Id.* "[A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health

or safety; ... the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Plaintiff's cause of action for negligence does not set out a valid claim under Section 1983. Plaintiff's negligence claim lacks merit as a federal civil rights action; and thus, his negligence claim should be dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**F.     Fifth Amendment**

Plaintiff asserts that he is bringing claims under the Fifth Amendment. He does not explain how his rights were violated under the Fifth Amendment. Plaintiff's claim under the Fifth Amendment fails because Plaintiff sues only state actors in this cause. The Fifth Amendment applies only to a violation of constitutional rights by the United States or a federal actor. *See Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Plaintiff's Fifth Amendment challenge fails to state a claim upon which relief may be granted and should be dismissed pursuant to 42 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**G.     Injunctive Relief**

As part of the relief he is requesting, Plaintiff requests a permanent injunction directing all Defendants in their official capacities to cease their physical, mental, emotional, and psychological mistreatment of him. (Dkt. #69, p. 6). For a permanent injunction to issue a plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *See Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)). Here, the Court need not undertake an analysis of whether equitable relief is appropriate as Plaintiff

does not prevail on the merits of his claims. Plaintiff's request for prospective injunctive relief against the Defendants in their official capacities should be denied.

## RECOMMENDATION

For reasons expressed above, it is **RECOMMENDED** that Plaintiff's claim for money damages against the Defendants in their official capacities be dismissed without prejudice. It is further **RECOMMENDED** that the remainder of Plaintiff's civil rights lawsuit be **DISMISSED** for failure to state a claim upon which relief can be granted, with prejudice, pursuant to 28 U.S.C. . § 1915(e)(2)(B) and § 1915A(b)(1).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 28th day of November, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE